May it please the court, Diane Hare with the Federal Defenders of Eastern Washington on behalf of Mr. Basher. Earlier this week, I'd like to draw the panel's attention to two areas of illegality. One was the warrantless seizure of the Bashers at their home in a tent in a camp in a national forest area, and the other was the de facto search of their tent by Deputy Cipher sending a 17-year-old into the tent to retrieve a firearm. Earlier this week, the Ninth Circuit published an opinion, United States v. Struckman. I have provided a copy of that opinion to my opposing counsel and have provided copies for the panel and ask the court to consider the importance of Struckman in my argument today and look to the panel for any further guidance in terms of if you wish for additional briefing. But the issue that's raised in Struckman is that there, as the district court did here, the Ninth Circuit held that Terry doesn't apply to homes, and I turn the court's attention to Where does it hold? I haven't had a chance really to read the case. Page numbers begin at 6633, and on page 6643, the court held, before evaluating whether there were exigent circumstances, we note that the district court upheld the officer's warrantless search and seizure under Terry v. Ohio. That was error, as the Terry exception to the warrant requirement does not apply to in-home searches and seizures. The usual rules pertaining to Terry stops do not apply in homes. They also cite Martinez for that proposition. And that's the situation that we have here. We have Mr. Basher and his son at home in a tent. However transitory that may be, then do we have authority saying that you view a tent at a campsite in a national park? As if it was a home. Yes. The right to privacy in it, number one, 36 CFR 261, the actual citation that Officer Bickel referenced in his testimony regarding occupancy and use, refers to residences and defines a residence as a tent or campsite. And in fact, when they said they were going to investigate the shots that were fired the night before, that that formed the basis for their alleged reasonable suspicion to go to that site. So this regulation itself defines a tent and a campsite as a residence. United States v. Gooch stands for the proposition that people within a tent have a reasonable expectation of privacy, and they treated the officer's duty in Gooch the same as they would when they come to your home, that they needed to obtain a warrant. In Gooch, the night before, people alleged they had actually been assaulted with a man with a firearm. The following morning, officers respond to the tent. Campers say the people are there. And the Ninth Circuit held that there's no exigent circumstance just because there's a gun inside the tent, and you need to get a warrant when you're going to arrest people in their home. So you said that the regulation defines tent as a residence? Under 36 CFR 261 in the definition section, I think that's .1 or .2, residence is defined as a tent, if I may. I haven't exactly. Well, I noticed a news article about Stuckman, but I haven't yet had the opportunity to study it. It may be that, given your interest in it, that we'd want the government and you both to address it in a supplemental brief, but the panel can address that in comment. I think that's fair. I understand that. In the statute, residence is defined as any structure or shelter, whether temporary or permanent, including but not limited to buildings, buses, cabins, campers, houses, lean-to. Which statute is that you're reading? This is the CFR 36 CFR 261, the definition section portion. The 61 point. And what are those regs aiming at? They are aimed at the National Forest System. I'm trying to find the point. Pinpoint. 261.2 is the definition section of that statute, which defines residence and includes a tent and a camp as a home or residence. Let me understand the facts here before you go farther on this argument. So what happened here, as I understood it, was that these off-duty officers heard like a gun discharge in the National Forest, and they also were told by someone else that there was a fire at a campsite, and so they go to the campsite. Now, did they search the tent? The following morning, they go to the campsite, and they blurp their siren, one officer says, for ten seconds, and they move in around the tent, and they ask or tell, and that's disputed. The officer, two years later, couldn't remember exactly what words he used, to come out of the tent with your hands up. Mr. Basher and his son come out with their hands up, and the officer asks, where's the gun? Mr. Basher, they also perform further terry-type stops. They pat them down, make sure they don't have weapons. They say the gun's in the tent, and then they say go get it to the 17-year-old. And his father nodded. Stockman says you can't have a terry stop at a residence. That's right. And so now what they're doing here is a terry stop, and I asked the officer, you didn't have a warrant, you didn't call for a warrant, and he answered in the record, no, I didn't. And Stockman stands for the proposition that what they were doing there was pulling people out of their home without a warrant, and they're conducting a terry stop investigation on these people at their home, in their camp, and it's our position that's illegal. Well, it didn't happen in the tent. They were in their camp, which the testimony was they were the only people in the camp. There was no one else around, and it was immediately outside their tent. They were either asked or told. That's curtilage. And no one's briefed curtilage, Your Honor. No. And yet, at the same time, I think we all know that when people go camping in the National Forest and they have their campsite, they're not expecting people to come up through their camp, and the everyday living that you do both inside and outside of the home does occur, not just inside your tent. You have things that's your private property in your camp. So I see I have two. I'm a little confused then. I was under the impression that in a campsite type of situation, that it's only the tent itself that is your home. The rest of it isn't like your backyard. The rest of it isn't like the curtilage. And so it doesn't have the same protection outside of that tent, outside of the home. I don't believe that either the government or Mr. Basher has addressed the issue of curtilage outside of the tent in any briefing that's been submitted to the panel or the court. No, no, I don't mean to imply that. And I believe that that question is undecided. I believe that courts have looked at what is a tent like. They've said that it's more like a container that's closed, that people have a reasonable expectation of privacy. This CFR treats it as a home, says it's a residence. We're not really in that situation, though, here, because when they call them out, and they do come out, then ask about where's the gun, and it's in the tent, it's in the home. Would you get it, please? They didn't go in to get it. They were asking the owner, the mature man there, to produce it. They directed their inquiry to the 17-year-old. Okay, saying, go get the gun. And his father nods. And his father nods affirmatively to him, and he goes in, gets it, and brings it out. And that's the difference between whether, number one, we're in the land of a Terry Stop in a home, and whether compliance equals voluntary agreement or consent. Well, it's a Terry Stop outside the home, in the campsite area, right? I believe they were seized, and that there was a show of authority when the officer drove his truck nose-to-nose, blurped his siren, came up and told him to come out with your hands up when they were inside the tent, when they're inside the home. What do you mean nose-to-nose? I thought there was testimony that there was plenty of room to back out or to drive around. Officer Seifer testified that truck could not move. Officer Bickel testified, well, the beach was there, so there's no real way to completely block in the truck. But Officer Seifer said, no, it's a fair statement that I blocked his truck in. His partner didn't agree, apparently. I'm sorry? His partner didn't agree, apparently. One was a Forest Service officer who had arrived independently. Officer Seifer also arrived. He offered different conflicting testimony. If I may, just reserve in case the Court has further questions of me. Well, it's kind of a tough one because I'm sure we all, all members of the panel, did a lot of pre-Stuckman preparation. So we'll be interested in the government's view. Have you had a chance to look at this Stuckman case and apply? I have. Counsel was here early, as was I, and I was provided the case. All right. Educate us then. Well, that's a tall order, Your Honor. Stuckman in particular deals with a report of a, originally a report of a burglary by a neighbor who originally pointed out the wrong house. There was some testimony that when officers then later arrived, she pointed out the correct house. It indicated that an individual had climbed over the fence with a backpack. Officers then saw through a hole in the fence, contacted the individual in the backyard, immediately drew weapons on that individual, had them down. The individual protested that he actually was, belonged at the residence. So he was in the backyard. So no one, as Judge Mills points out, has remotely said that the campsite's like the backyard to the tent, that you didn't have Stuckman yet. Correct. And even if we had Stuckman, the government would argue that a campsite is a different animal than a fenced backyard. As Judge Whaley said, who had a lot of experience camping in the National Forest, one would like to think that people would stay out of your campground, but that's not often the fact. People run through from time to time. But in any event, while Gooch and the other cases that the defendant has cited stand for the proposition that there's a reasonable expectation of privacy inside of the tent itself, what the officers did was, the government would contend, was actually a less intrusive method of making contact with the individuals. The government would submit more reasonable to provide advance notice to an individual that you're going to come up to their tent rather than functionally knocking on their door in this case. There were a couple of short blurbs. The duration was listed as one to two seconds, and a call saying that it was the sheriff's office. The individuals were then observed, the defendant and his son, were observed to be moving around and coming out of the tent. I would submit that the record actually shows that Deputy Cipher said that as they were coming out of the tent, he asked them to keep their hands visible. He didn't say, put your hands up. And that I believe counsel suggested there was a pat-down search. I don't believe there's anything in the record showing a pat-down search. Do you think, I don't know if you argued this or not, but it sounds like Storkman says you can't have a Terry stop in someone's backyard, because it's correlated to a house, and you can't have a Terry stop in the house. But are you relying exclusively on this being a Terry stop, or do you think there was probable cause? I would submit that there is probable cause. Judge Whaley denied the motion, not even reaching that point, saying that it was a valid Terry stop. The government's position was that there was a report from campers closest to this dispersed campsite, the following morning, the 2nd, to Officer Bickel, saying, here's where the fire was pointing to the defendant's tent across the river. The officers then went together, Deputy Cipher arriving first, Officer Bickel arriving shortly thereafter, and Deputy Cipher's testimony was that there was a still smoldering campfire. So it's the government's contention that both under the CFR with fires, and then also under the revised Code of Washington for Reckless Burning 2nd, you still have an active campfire, so you still had PC to arrest, and you could have arrested. And that was the opinion of Deputy Cipher when questioned. Now for those offenses, could you arrest someone to put them in jail? Yes. I thought you could do that for some felonies and some misdemeanors, but for others that you couldn't. I've not been a State Deputy for a while, but my memory of RCW 1031 is that there are classes of offenses for which they need not be committed in one's presence, but that an offense such as this as a reckless burning would need to be committed in presence. It was the government's position that the still smoldering fire constituted the ongoing offense and would therefore subject the individual to arrest. One officer said there was smoke, and the other one said there wasn't, right? All he said was that he saw recent signs of a fire. He did not indicate that he observed smoke. One saw smoke, the other saw ashes. Right. Although his precise testimony, Officer Bickel, was that after the end of the contact, he then went to the fire, observed it, and saw fresh ash. So the testimony regarding the status of the fire occurred at slightly different times. But at the end of the day, it's the government's position that viewing the district court judge's decision in the appropriate light, the clear error for facts and de novo for the legal conclusions, that there was a basis for Judge Whaley to conclude that the original encounter was consensual and that the weapon was retrieved by way of permission, that the officer asked that it be retrieved, that the son retrieve it. The specific request was that the son do that, and that the defendant consented through nodding and then continued to consent as the son produced it. It's the government's additional contention that at that point, the contraband nature of the weapon was immediately apparent to the responding deputy, and he could then seize the weapon and make safe. And then after determining whose weapon it was, he then immediately advised of Miranda. The government believes that the Craighead decision cited by the defense is distinguishable, although the court found a custodial circumstance in a home. You have eight agents, some with unholstered firearms, four other non-agents, and while there was verbiage, you're free to go, what in fact happened was the individual was directed back to a storage room where the conversation occurred. Here in this case, the government would contend that the deputy and the officer complied with Terry. They quickly and with the least restrictive means possible, either confirmed or disconfirmed, their concerns regarding the firearm and the illegal fire. And the government's contention is that Judge Whaley got it right when he said it would have been derelict for them not to have investigated. At least for me, it didn't seem a very tough argument to say they complied with Terry. But now the question is, does Terry apply in a campsite where people are called out of their tent in light of Stuckman? And, Your Honor, again, I'll ask the court not to hold me to a precise reading of Stuckman. I think at least as one judge, I'm going to want to let both sides submit a supplemental brief on Stuckman. Yeah, I think we can agree that we should, I mean, it just came out this week and no one had an opportunity to brief it. Do you agree? Yes. So why don't you both submit, as you did in the last case, a supplemental brief analyzing Stuckman and how it fits into your theories of the case. And, again, ten days from today would be good so we can get it. Certainly, Your Honor. One thing I would like to add from my reading of it is that while the court found that there was a probable cause for the burglary offenses under the Oregon statutes, the court did assume for the purposes of argument that there was probable cause to believe that a criminal trespass had occurred. And while the... That would be using the campsite without having signed up for it or whatever? I'm sorry, I'm talking about Stuckman, Your Honor, the fenced backyard. And so that even in Stuckman, there was the ability to be in that area initially on a probable cause detention here, which we also believe was appropriate. And I'll save any further briefing. Well, I'll just tell you my question that I have, too, that is we know the tent has, you have a reasonable expectation of privacy. So what about the campsite? Is there any law on that? And if there is, you can put in your supplemental brief. I'd be happy to do so. I'm aware of none as I sit here today. That's what I'm thinking, that there's probably none. And it doesn't seem to me, actually, that National Forest is akin to a backyard. But I don't know. We decided this other case. Yeah. You also can't knock on the door of the tent. It's a flap, right? I did not make the point so crisply, but that was one that I wish to make as well. I see that I'm out of time. I have nothing further unless the panel has questions. All right. Thank you. We will submit United States v. Thatcher and await your supplemental briefing on the new case.
judges: Mills, Wardlaw, Gould